**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ELIEZER ABRAHAM ANGARITA-BADIA
and AROUNA ICHOLA NONVIDE

                Plaintiffs,

KEVIN RAYCRAFT, Acting Field Director
for U.S. Immigration and Customs
Enforcement, Detroit Field Office;
MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security; TODD
BLANCHE, Acting U.S. Attorney General.

                Defendants.

Case No. 1:26-cv-1250

Hon. Robert Jonker

---

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

**EXPEDITED CONSIDERATION REQUESTED**

### I.  INTRODUCTION AND STATEMENT OF FACTS

Plaintiffs are two noncitizens currently detained in this district by the Department of Homeland Security (DHS) and are seeking a temporary restraining order requiring Defendants to release them from ICE custody immediately and, further, enjoining Defendants from re-arresting and re-detaining Plaintiffs absent a material change in circumstances and only then after the requirements of due process have been met. This case is not related to the distinct question of whether the men are entitled to a bond hearing under 8 U.S.C. § 1226 or are instead subject to mandatory detention pursuant to § 1225. That question presupposes their recent re-arrests by ICE agents were lawful and constitutional in the first place and is thus irrelevant.

Plaintiffs' counsel has conferred with counsel for the Respondents and Respondents oppose this motion.

1

Plaintiffs respectfully request expedited consideration of this motion because the Plaintiffs are both currently detained in violation of the law and the constitution which is per se irreparable harm.

Plaintiffs are asylum seekers. Mr. Nonvide is from Benin and arrived here in 2025. Mr. Agarita-Badia is from Venezuela and has been here since 2022. When each man crossed the southern border, they were arrested and detained by immigration officials. Those immigration officials determined that neither man was a flight risk or a danger to people or property and released them on "conditional parole" under 8 U.S.C. § 1226(a)(2)(B)[1] to live and work freely while their respective immigration cases progressed. But both men were recently re-arrested and re-detained by Immigration and Customs Enforcement (ICE) agents. Both men remain in detention in this District. But that detention is unlawful and unconstitutional so both men must be released immediately.

First, there are laws and regulations governing the revocation of § 1226(a) parole and the re-detention of parolees. Only specific immigration officials are authorized to make the decision to revoke § 1226(a) parole and re-detain parolees. 8 C.F.R. § 236.1(9). Here, there is no evidence that any authorized officials made any decision regarding either of Plaintiffs' parole revocation, re-arrest, or re-detention. Because Defendants did not follow the law and their own regulations, they acted without authority and the re-arrests and re-detention must be set aside as unlawful. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir. 2004) (finding that it is an elemental principle of administrative law that agencies are bound to follow their own regulations" and an that agency's action that fails to observe the procedures required by its own regulations should be

---

[1] "Conditional Parole" is the language used in the statute itself. But release under § 1226(a)(2)(B) is also commonly termed "release on recognizance" by DHS itself. More colloquially, it is sometimes referred to as "OREC" or "220A release." I-220A is the form number for the Order of Release on Recognizance (i.e., the OREC).

2

set aside); *Prada v. Raycraft*, No. 1:25-cv-1944, 2026 U.S. Dist. LEXIS 9413, at *9 (W.D. Mich. Jan. 16, 2026) (setting aside as unlawful ICE arrest of noncitizen previously paroled under § 1182(d)(5) and ordering immediate release).

Second, when the government paroles someone from custody, that person gains a substantial liberty interest in remaining free subject to the terms of that parole. Because DHS previously released each Plaintiff on conditional parole after finding they were not a flight risk or danger, their liberty interest is categorically different than other noncitizens currently detained by ICE for the first time.

The government cannot deprive the individual of that liberty interest without due process, even if the government enjoys significant discretion over custody decisions. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Due process, in this context, requires pre-arrest notice and a meaningful opportunity to be heard and, critically, a material change in circumstances. Here, Plaintiffs' paroles were revoked, and they were re-detained without any notice and without either a pre- or post-arrest hearing. Most importantly, neither Plaintiff violated the terms of their parole and there was no change in any material circumstance relevant to either Plaintiff's potential flight risk or danger.

Finally, Defendants also violated the Administrative Procedures Act because they did not follow the law and regulations when they re-arrested the paroled Plaintiffs. To the extent any decision was made by an authorized official to revoke either Plaintiffs parole, that decision was arbitrary and capricious and must be set aside.

Plaintiffs will succeed on the merits of their claims. Plaintiffs are being held in violation of the laws and constitution of the United States which is per se irreparable harm. Defendants have no countervailing interest in the detention of previously paroled individuals who are neither

3

dangers nor flight risks. The public, conversely, has a weighty interest in avoiding the needless cost and burden of unnecessary and unlawful detention. The Court should grant this Motion and order Plaintiffs released and issue an injunction preventing their re-detention by ICE without notice and an opportunity to be heard and a showing of materially changed circumstances.

## II.  STATEMENT OF FACTS

Plaintiff Arouna Nonvide is a citizen of Benin and an asylum seeker. He arrived in the United States at the southern border on January 16, 2025. He was arrested by Customs and Border Patrol (CBP) agents, processed, charged with removability, and released on his own recognizance under 8 U.S.C. § 1226(a)(2)(B) ("conditional parole"). Ex. A, Nonvide Release on Recognizance Order, Form I-220A (Nonvide Order). Since then, he has resided in Detroit, Michigan.

The Nonvide Order states that "Failure to comply with the conditions of this order may result in revocation of your release and detention by Immigration and Customs Enforcement." Ex. A, p. 2. Further, the form specifically contemplates such parole can only be revoked in two specific circumstances: "I hereby cancel this order of release because: [ ] The alien failed to comply with the conditions of release. [ ] The alien was taken into custody for removal." *Id.*

Plaintiff Nonvide reported in person to his initial scheduled ICE check in and was fitted with a GPS ankle-monitor. *Id.* at p. 2. After approximately two months, ICE determined that GPS monitoring was no longer necessary and removed the ankle monitor.

Plaintiff Angarita-Badia is a citizen of Venezuela and an asylum seeker. In July 2022, he crossed the southern border, was detained and charged by CPB agents, and released on his own recognizance pursuant to 8 U.S.C. § 1226(a).[2] Since then, he has resided in Detroit, Michigan.

---

[2] Plaintiff Angarita-Badia does not have a copy of his release on recognizance order. On

4

In separate incidents in March 2026, Plaintiffs were re-arrested by random ICE agents during untargeted immigration sweeps. Plaintiff Nonvide is currently detained in Calhoun County Jail in Battle Creek, Michigan. Plaintiff Angarita-Badia is currently detained at the GEO North Lake Processing Facility in Baldwin, Michigan. Their arrests were not preceded by any notice or opportunity to be heard.

Neither Plaintiff violated their parole, and there were no material changes in circumstances relevant to whether they are a danger or flight risk. No DHS official made any discretionary decision to revoke their parole or would have had any basis to do so.

**III. STANDARD OF LAW**

To determine whether a temporary restraining order should issue under Fed. R. Civ. P. 65(b), the courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (internal quotation marks and citation omitted). These factors are not "prerequisites" but are instead part of a balancing inquiry. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). But the first two factors are the most important. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

**IV. ARGUMENT & AUTHORITY**

**A. Plaintiffs Will Succeed on the Merits of their Due Process Claims**

---

information and belief, it is materially identical to his co-Plaintiff's order.

i.    <u>Defendants Failed to Follow the Applicable Regulations So the Re-Arrests</u>

<u>Were Made Without Legal Authority and Must Be Set Aside</u>

Federal agencies like DHS are "obliged to abide by the regulations it promulgates." *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *Accardi v. Shaughnessy*, 347 U.S. 260, 267, 74 S. Ct. 499, 98 L. Ed. 681 (1954).

When they first arrived at the southern border, Plaintiffs were both arrested, detained, and released under the following section of the INA:

> (a) Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > (B) <u>conditional parole…</u>
>
> (b) Revocation of bond or parole. The Attorney General at any time may revoke a bond or parole authorized under subsection (a), <u>rearrest the alien under the original warrant</u>, and detain the alien.
>
> 8 U.S.C. § 1226 (underlines added).

Release on bond or parole is only possible after the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §236.1(8).

Per DHS regulations, only certain immigration officers are authorized to release noncitizens on bond or conditional parole pursuant to § 1226(a). But that list is long: there are 52 authorized officials specified and, in addition, individuals who have been delegated that authority and

6

completed "any required immigration law enforcement training," may also issue warrants. 8

C.F.R. § 236.1(b)(1) (incorporating by reference the listed officers in 8 C.F.R. § 287.5(e)(2)).

However, only a much narrower class of immigration officials are empowered to revoke

parole under § 1226(b):

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.
>
> 8 C.F.R. § 236.1(9) (underline added)

This regulation thus drastically limits the number of authorized officials who can revoke

release once granted and requires some rational decision-making occur before revocation is

authorized. It thus plainly reflects DHS's own concern with needless, expensive, and pointless

re-arrests and re-detentions of parolees.

In sum, once released on § 1226(a) parole, a noncitizen can only be re-arrested and re-

detained *after* an authorized immigration official has made a final decision to revoke that

noncitizen's release, and then, in fact properly revoked that release. *Ebu v. Tindall*, Civil Action

No. 3:25-cv-779-RGJ, 2026 U.S. Dist. LEXIS 20063, at *8-9 (W.D. Ky. Jan. 30, 2026) ("[T]hus,

following the plain text of the regulation, Ebu can only be detained after his Form I-220A was

properly revoked."). Moreover, as noted above, the I-220A form itself lists only two instances

where the release can be revoked: the noncitizen violated the terms of their parole, or the

noncitizen was taken into custody for removal (i.e. they are subject to a final order of removal).

Ex. A, Nonvide Order, p. 2.

7

But, here, no official made any decision regarding the parole of either Plaintiff. Instead, they were re-arrested as part of untargeted immigration sweeps by low-level ICE agents. No authorized immigration official ever properly revoked the release of either Plaintiff. No authorized immigration official ever found that either Plaintiff violated the terms of their parole and neither Plaintiff is subject to a final order of removal.

Moreover, the BIA has held, "where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (quoting *Matter of Sugay,* 17 I. & N. Dec. 637, 640 (B.I.A. 1981)) *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). More importantly, the court in *Saravia* also highlighted the government counsel's representation in that case that "DHS has incorporated [*Sugay's*] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Id.* (underline added).[3]

Federal agencies like DHS are "obliged to abide by the regulations it promulgates." *Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *Accardi v. Shaughnessy*, 347 U.S. 260, 267, 74 S. Ct. 499, 98 L. Ed. 681 (1954). Failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process." *Id.* (internal quotation marks omitted).

Because Defendants did not follow the applicable statutory and regulatory requirements to revoke Plaintiff's parole, they did not have the authority to re-arrest and re-detain them. Without any valid authority to arrest and detain the Plaintiffs, they must be immediately released. *Ebu,*

---

[3] Plaintiffs are without sufficient information to state whether such a policy remains in place and if so, whether it would provide an independent basis for an *Accardi* type claim.

8

Civil Action No. 3:25-cv-779-RGJ, 2026 U.S. Dist. LEXIS 20063, at *13 (§ 1226(a) parolee ordered released immediately where no authorized official revoked their parole prior to re-arrest); *Singh v. English*, No. 3:26-CV-113-CCB-SJF, 2026 U.S. Dist. LEXIS 32737, at *9 (N.D. Ind. Feb. 18, 2026) (same for previous release on bond under § 1226(a)); *see, also, Arevalo v. Lynch*, No. 1:25-cv-1365, 2025 U.S. Dist. LEXIS 254829, at *13 (W.D. Mich. Dec. 9, 2025) (finding ICE failed to follow applicable regulations when it arrested noncitizen previously paroled under § 1182(d)(5) and ordering immediate release).

      ii.    <u>Plaintiffs Have Two Distinct and Substantial Liberty Interests Protected by the Fifth Amendment</u>

Before a noncitizen can show a violation of the Due Process Clause, he or she must initially "establish that [he] has been deprived of a life, liberty, or property interest sufficient to trigger the protection of the Due Process Clause in the first place." *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000). A "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state [or federal] laws or policies." *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221(2005)).

Individuals released on conditional parole obtain a substantial and distinct liberty interest in remaining free from imprisonment. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Even where the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[] to live up to the ... conditions [of release]." *Id.* "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Id.*

9

Thus, even where the government wields significant discretion over an individual's liberty, as here, that individual *nonetheless* retains a protected interest in that conditional liberty following release. *See Id.; Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context).

District courts across the country have held the same in this exact context: release on conditional parole under § 1226(a). *See, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 U.S. Dist. LEXIS 38460, at *12 (S.D. Tex. Feb. 25, 2026) ("Respondents provided Alvarez-Rico with a liberty interest when they released him from custody [under § 1226(a)]."); *Ekenge v. Baltazar*, Civil Action No. 1:26-cv-00630, 2026 U.S. Dist. LEXIS 45855, at *11 (D. Colo. Mar. 5, 2026) (same and collecting cases).

Similarly, every court in this district has found an initial release from DHS custody under a different statutory provision creates a distinct liberty interest. *E.g., Lorenzo v. Raycraft*, No. 1:26-cv-77, 2026 U.S. Dist. LEXIS 27503, at *14 (W.D. Mich. Feb. 10, 2026) (supervised release after final order of removal creates liberty interest).

There is no dispute that each Plaintiff was first apprehended by Customs and Border Patrol (CBP) agents at the southern border – Mr. Angarita-Badia in 2022 and Mr. Nonvide in 2025. They were then processed, charged with removability, and released on their own recognizance, a form of conditional parole under 8 U.S.C. § 1226(a)(2)(B). The orders of release state, "you are being released on your own recognizance <u>provided you comply with</u> the following conditions…" Ex. A. p. 2 (underline added). The orders themselves also contemplate that revocation of release

10

is only permissible in two circumstances: where the noncitizen "failed to comply with the conditions of release" or where the noncitizen "was taken into custody for removal." Ex. A, p. 2.

Both Plaintiffs did, in fact, comply with the conditions of their parole. Further, there has not been any material change in either Plaintiff's circumstances related to that initial determination regarding flight risk and danger. But, in March, ICE agents re-arrested each Plaintiff. The Plaintiffs remain in ICE detention in Michigan. Neither Plaintiff received notice of a parole revocation or were provided with a list of alleged parole violations or allowed to present evidence to rebut or mitigate any alleged violations.

        iii.     Due Process Requires Pre-Deprivation Notice and a Hearing, and a Material Change in Circumstances

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding what process is due, applies in the context of immigration detention. *See United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020). The central question here is whether due process requires pre-detention notice and a hearing *and* a showing of changed circumstances, or whether a post-detention bond hearing held pursuant to 8 U.S.C. § 1226(a) is sufficient process.

Here, all three factors weigh in favor of finding that prior to re-arresting a conditional parolee, due process requires a pre-arrest hearing and a showing of changed circumstances.

Courts balance three factors to determine what process is due:

(1) the private interest at stake;
(2) second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards;
(3) and third, the government's countervailing interests.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

a. *The Private Interests are Substantial and Unique for Parolees*

First, there is no dispute that Plaintiffs have a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Moreover, as explained above, each Plaintiff gained a separate and heightened liberty interest following their initial release from DHS custody.

Each Plaintiff, separately, has already proven to DHS officials that they merit release from detention as they are neither flight risks nor dangers. Plaintiff Nonvide has been able to live freely, work, and build community ties while his asylum case has progressed over the last year. Plaintiff Angarita-Badia, similarly, has been living and working freely for almost four years.

Each Plaintiff relied on the government's explicit promise that they would remain free "provided you comply with" the conditions of their parole – which they did. This liberty interest is distinct from the liberty interest of other noncitizens who have been detained for the first time or re-detained following a parole violation or material change in circumstances (for example, when their immigration proceedings conclude with an order of removal or they are arrested and convicted of a violent crime).

b.  *A Post-Detention Bond Hearing Presents an Unacceptable Risk of Erroneous Deprivation, and a Material Change in Circumstances and Pre-Detention Bond Hearing is a Valuable Safeguard with Less Administrative and Fiscal Cost*

The second *Mathews* factor considers whether a specific process results in a risk of erroneous deprivation of a protected interest, and the probable value, if any, of additional procedural safeguards. *Mathews*, 424 U.S. at 335. Here, there is a high risk of erroneous deprivation if a parolee can be re-detained without a pre-detention hearing and without any evidence of a parole violation or material change in circumstances. Civil immigration detention is, of course,

12

permissible – but only to prevent flight or protect against danger to the community, see *Zadvydas*, 533 U.S. at 690-91. Put in the negative, where a noncitizen is neither a flight risk nor danger, their detention is erroneous. *Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020). Here, Plaintiffs already proved to DHS that their detention is unnecessary and unwarranted. Without at least an initial showing of changed circumstances by DHS and an opportunity to respond, the risk of erroneous deprivation is extreme. *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 U.S. Dist. LEXIS 169007, at *16 (D. Me. Aug. 29, 2025) (*citing Saravia*, 280 F. Supp. 3d at 1197. In *Bermeo Sicha*, the court analysed the habeas petitioner's claim under *Mathews* and found that to re-detain him after conditional parole, "the government had to show a change of circumstances." The risk is further heightened where, as here, DHS ignores their own regulations and allows low-level ICE agents to revoke parole instead of relying on the expertise and authority of the listed higher-level officers.

A pre-detention hearing is doubly effective in reducing that risk because of the inherent practical difficulties in challenging a parole revocation once detained like lack of access to counsel, language barriers, and lack of access to the evidence – the same procedural difficulties that plague § 1226(a) bond hearings in immigration court. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 30-32 (1st Cir. 2021); *Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020). In other words, a noncitizen's ability to meaningfully respond to their parole revocation is seriously diminished if the hearing is held after they have been detained. Further, as this court is well aware, post-detention bond hearings are not readily available to nearly all detained noncitizens – because Defendants refuse to provide them absent a federal court order.

Second, under the BIA's own standards, the Plaintiffs should not be detained: neither Plaintiff has a criminal record; they have been in the United States for years; they each have

13

significant family ties here; they each have a stable address; they each have a pending asylum application; neither Plaintiff attempted to attempt to evade or flee immigration authorities, either during their initial encounters with CBP agents or when they were re-arrested; and their only immigration violations were crossing the border to seek asylum. *See, Matter of Guerra,* 24 I&N Dec. 37, 40 (BIA 2006) (providing list of factors immigration judges should consider when deciding bond). Additionally, both Plaintiffs already met this burden on their initial release, and the Defendants cannot show that there has been a material change in circumstances relevant to those initial determinations. Because they are not flight risks or dangers, their detention is erroneous. A pre-arrest hearing would have confirmed that fact and prevented not only the irreparable deprivation of their liberty but also spared the American people the significant cost of detention and federal court litigation.

Conversely, the value of the "additional safeguard" of a pre-detention hearing and a requirement of a material change in circumstances is substantial: it would prevent the unnecessary detention of other individuals who DHS has already determined are not flight risks nor dangers.

### c. The Government Has No Countervailing Interest

The final *Mathews* factor examines "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" -- which ultimately entails an assessment of the "public interest." 424 U.S. at 335, 347.

The government has a legitimate and weighty interest in ensuring noncitizens appear during their immigration proceedings and pose no harm to their community. But in the case of parolees, that interest is *de minimis* because DHS has already determined they are neither flight risks nor

14

dangers to persons or property. 8 C.F.R. § 236.1(8). Regardless, even this minor interest is still fully protected by pre-detention notice and a hearing because that process is directed specifically determining whether there has been a material parole violation or change in circumstances. Put differently, there is "no legitimate interest in arresting" Plaintiffs "without a pre-detention hearing." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025); *see, also, Zadvydas*, 533 U.S. at 690-91.

Indeed, as noted above, DHS appears to have conceded this point as their standard practice is to not re-detain paroled individuals absent a material change in circumstances. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)).

On the other side of the scale, the administrative burden and financial cost of pointless (because unnecessary) re-arrests and continued (or even brief) re-detention is massive. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("On the other hand, the costs of immigration detention are staggering."); *Marin v. Lynch*, No. 1:25-cv-1444, 2025 U.S. Dist. LEXIS 255912, at *16-17 (W.D. Mich. Dec. 10, 2025) (Notably, continuing to Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention."). The costs here are not limited to the public fisc because unnecessary detention also "imposes substantial societal costs," as it "separates families and removes from the community breadwinners, caregivers, parents, siblings and employees." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (internal quotation marks omitted). Accordingly, the public interest is well served by requiring DHS to provide pre-detention notice, hearing, and changed circumstances before revoking conditional parole and re-detaining noncitizens.

15

Lastly, there is simply no additional cost or administrative burden involved in providing pre-detention notice and a hearing and requiring a showing of changed circumstances when compared to post-detention bond hearings. It strains credulity to believe that providing notice, an informal hearing, and a showing of changed circumstances will ever be as remotely expensive and burdensome as arresting, booking, processing, transporting, feeding, housing, and guarding detainees in addition to litigating habeas petitions (an extraordinary burden and cost for the AUSAs and federal courts), scheduling short notice post-habeas bond hearings, providing a bond hearing, processing bonds, processing release orders, and finally releasing a detainee.

Under *Mathews,* each factor weighs heavily of requiring the government to show a material change in circumstances and provide notice and an opportunity to be heard prior to re-detaining a parolee. Defendants are, of course, free to attempt to revoke either Plaintiff's parole and re-detain them – but they must first release them, provide them with notice and a hearing, and show materially changed circumstances. *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 U.S. Dist. LEXIS 38460, at *16 (S.D. Tex. Feb. 25, 2026) (release is proper remedy for due process violation based on previous § 1226(a) parole);

### B.  Plaintiffs will Succeed on the Merits of their APA Claims

Under the APA, courts must:

hold unlawful and set aside agency action, findings, and conclusions found to be:

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law…

5 U.S.C. § 706(2).

In the Sixth Circuit two conditions must be met for agency action to be considered final: (1) "the action must mark the consummation of the agency's decisionmaking process," and (2) "the actions must be one by which rights or obligations have been determined…or from which legal consequences flow" *Hosseini v. Johnson*, 826 F.3d 354, 360 (6th Cir. 2016 ) (internal quotation marks and citation omitted). Here, 'consummation' is achieved where the decision is not "merely tentative or interlocutory in nature." *Id.*

Here, both Plaintiffs were re-arrested pursuant to and are being detained under the mandatory detention statute, § 1225, in accordance with Defendants' novel interpretation of the INA. *See, e.g., Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The decision to detain them is thus not tentative or interlocutory because they are unable to challenge that decision through a bond hearing or appeal to the BIA. *A.B.D. v. Wamsley*, No. 6:25-cv-02014-AA, 2026 U.S. Dist. LEXIS 11720, at *39 (D. Or. Jan. 22, 2026); *but see, Gamez Lira v. Noem*, No. 1:25-cv-00855-WJ-KK, 2025 U.S. Dist. LEXIS 173818, at *11 (D.N.M. Sep. 5, 2025) (stating, without reasoning, "[t]he Court does not understand a detention to fall within that [final action] category."). It cannot be disputed that 'legal consequences' flow from Defendants decision to revoke parole and detain Plaintiffs without bond – detention is the most drastic 'legal consequence' in the civil context.

Section 1226(b) authorizes the Attorney General to "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b) (underline added). Immigration regulations clarify that only certain officials may exercise this revocation authority: "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and

17

deportation, [and] officer in charge (except foreign) [.]" 8 C.F.R. § 236.1(9). Thus, only re-detention pursuant to § 1226 (i.e. the original warrant) and made following a discretionary decision by an authorized official would be lawful.

There are three independent reasons for finding that the re-arrest and re-detention of each Plaintiff must be set aside under the APA. First, both Plaintiffs are being held under 8 U.S.C. § 1225. Conversely, the original warrants issued for both men ordered their arrest and detention pursuant to 8 U.S.C. § 1226 – which, uncoincidentally, also provided the legal authority for their conditional parole. Thus, their re-detention, pursuant to a different statutory authority was plainly not "under the original warrant." Because it is not under the original warrant, their re-arrest and re-detention is not in accordance with the law and/or was in excess of statutory authority.

Second, no authorized official ever made the requisite discretionary decision to revoke their parole and re-arrest the Plaintiffs. As noted above, the regulations only allow a certain set of immigration officials to re-arrest noncitizens and revoke their parole. 8 C.F.R. § 236.1(9). None of those listed officials participated in the re-arrest and re-detention of Plaintiffs. Their re-arrest and re-detention by unauthorized individuals is not in accordance with the law and/or was in excess of statutory authority. *Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1201 (W.D. Wash. 2025) (analyzing identical claim under the APA and finding immediate release proper where re-detention decision was not made by authorized individual).

Third, to the extent an authorized official *did* make the discretionary decision to revoke Plaintiffs' respective paroles and re-arrest them, that decision was arbitrary and capricious and must be set aside. Agency action is "arbitrary and capricious" and in violation of the APA where the agency fails to provide "a satisfactory explanation for its action including a rational

18

connection between the facts found and the choice made." *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 145 S. Ct. 898, 917, 221 L. Ed. 2d 436 (2025). Plaintiffs' original parole was granted, per regulations, because an immigration official found each Plaintiff was neither a flight risk nor a danger. 8 C.F.R. § 236.1(8).

Defendants cannot show that there has been a material change in circumstances relevant to those initial findings because there hasn't been any – neither Plaintiff, under Defendants' own standards, has become a flight risk or danger since their release. Defendants have not made any finding of facts with regards to either Plaintiffs' original parole and any current or changed circumstances. Instead, they were each arrested randomly in untargeted sweeps by low-level ICE officers who likely were not even aware the men had already been paroled by DHS. Thus, Defendants will be unable to show there was a "rational connection between the facts found and the choice made." Any decision to revoke the Plaintiff's parole was thus arbitrary and capricious and must be set aside. *Gonzalez,* 808 F. Supp. 3d at 1200.

### C. Plaintiffs Will Suffer Irreparable Injury

Irreparable harm must be "actual and imminent" rather than "speculative or unsubstantiated." *Abney v. Amgen,* Inc., 443 F.3d 540, 552 (6th Cir. 2006). Although irreparable harm is balanced against the other factors, there must be some irreparable harm to issue a TRO or injunction. *Refunjol v. Adducci*, 461 F. Supp. 3d 675, 709 (6th Cir. 2020).

"[W]here irreparable harm is based upon a violation of a plaintiff's constitutional rights, that violation, no matter how temporary, is sufficient to show irreparable harm." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, "when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Id.*

19

Plaintiffs are being detained in violation of federal law and the due process clause of the Fifth Amendment. Each minute they remain in custody is an irreparable injury.

### D.  No Harm Will Result from the TRO and instead the Public Interest Will Be Served

When the government is the opposing party, the final two factors—the balance of equities and the public interest—merge, because "the government's interest is the public interest." *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 512 (D.C. Cir. 2016) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The public interest factor favors immediate release. Both Plaintiffs are both experiencing irreparable injuries to their constitutional rights. And "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge Inc. v. Mich. Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994).

More relevant here though, the administrative burden and cost of continued detention outweighs any interest the government has in Plaintiff's continued detention. *Marin v. Lynch*, No. 1:25-cv-1444, 2025 U.S. Dist. LEXIS 255912, at *16-17 (W.D. Mich. Dec. 10, 2025) ("However, Defendants have not shown that they have a significant interest in Plaintiff's continued detention. Notably, continuing Plaintiff's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Plaintiff's detention.").

At the risk of extreme redundancy, there is no government interest in randomly detaining individuals who are neither a flight risk nor a danger because that does not "bear a reasonable relation to [the INA's] statutory purpose." *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001). Again, Defendants previously found that Plaintiffs were not flight risks or dangers, and

20

Plaintiffs' circumstances have not changed in any way that would negate those initial determinations by DHS officials.

## V.  CONCLUSION

Plaintiffs respectfully request this Court grant their motion and enter the following temporary restraining order:

a.  Defendants must immediately release both Plaintiffs, subject to any conditions of parole that existed prior to their re-arrest in March 2026;

b.  Defendants are enjoined from revoking the parole of either Plaintiff without a material change in circumstances;

c.  Defendants must provide reasonable notice and a hearing before a neutral decisionmaker prior to revoking either Plaintiff's parole based on changed circumstances.

Dated: May 1, 2026                      Respectfully submitted,


                                        /s/ Michael Drew

                                        **Neighborhood Legal, LLC**
                                        20 N. Clark Street #3300
                                        Chicago, IL 60602
                                        Tel. (773) 505-2410
                                        Email: mwd@neighborhood-legal.com

                                        *Attorneys for Plaintiff*


## CERTIFICATE OF COMPLIANCE

I, Michael Drew, certify that the length of this brief, as defined in LCivR 7.2(b)(i), is 6,030 words. The word count was generated by Microsoft Word for Mac, Version 16.98.

Dated: May 1, 2026                    Respectfully submitted,

                                      /s/ Michael Drew

                                      **Neighborhood Legal, LLC**
                                      20 N. Clark Street #3300
                                      Chicago, IL 60602
                                      Tel. (773) 505-2410
                                      Email: mwd@neighborhood-legal.com

                                      *Attorneys for Plaintiffs*